UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

J.P. MORGAN SECURITIES, LLC,

Plaintiff,

v.

LEWIS DUNCAN, III,

Defendant.

Case No. 2:22-cv-11732

HONORABLE STEPHEN J. MURPHY, III

_____/

**OPINION AND ORDER
GRANTING MOTIONS FOR TEMPORARY
RESTRAINING ORDER [2] AND TO STRIKE [24]**

Plaintiff J.P. Morgan Securities moved for a temporary restraining order against Defendant Lewis Duncan, a former employee. ECF 1; 2. Defendant responded to the motion. ECF 12. The Court ordered the parties to show cause for why the case should not be transferred to the Southern District of New York—the location approved in the arbitration agreement for temporary or preliminary injunctive relief. ECF 15, PgID 486–87 (citing ECF 5-2, PgID 283). The parties responded to the show cause order. ECF 23; 26. Both parties agreed that the Court should resolve the motion for a temporary restraining order, but neither party assessed whether the Court has the *authority* to resolve the motion. *See* ECF 23; 26. The Court later held a motion hearing.

Shortly before the hearing, Defendant moved to strike one of the declarations attached to J.P. Morgan's reply brief, ECF 22, for violating Local Rules because it exceeded the normal briefing length. ECF 24. The Court will grant the motion. The

1

declaration includes legal arguments that belong in a brief—not a declaration. *See* ECF 24. The declaration and briefing exceed the page limit in Local Rule 7.1(d)(3)(B). The Court will also order the Clerk of the Court to strike Defendant's declaration, ECF 25, that responded to J.P. Morgan's reply brief. The Court did not grant leave to file a sur-reply. Defendant therefore was not allowed to file a declaration responding to the arguments in the reply brief. But in the end, the Court will grant the motion for a temporary restraining order for the following reasons.

## BACKGROUND

Defendant worked as a broker at J.P. Morgan until he took a similar position with a competitor. ECF 12-2, PgID 373. When Defendant left J.P. Morgan, he was servicing more than three hundred client investment accounts. ECF 5, PgID 267.

A week before Defendant's resignation, he accessed sixty client profiles on J.P. Morgan's computers in less than thirty minutes. *Id.* at 275–76. The profiles contained confidential information such as investment, contact, and personal information belonging to the clients. *Id.* at 275. He again accessed more than one-hundred client profiles on J.P. Morgan's computers in less than forty-five minutes two days before he resigned. *Id.* at 275.

Since he left J.P. Morgan, Defendant has allegedly poached more than twenty clients from J.P. Morgan worth $24 million in assets. *Id.* at 267. One J.P. Morgan client explained that Defendant asked him to cancel his meeting with a J.P. Morgan broker and that Defendant had completed documents to transfer his investment

accounts to Defendant. *Id.* at 266. Defendant has also flooded several J.P. Morgan clients with follow-up calls and requests for meetings. *Id.* at 265–66, 274–75.

Defendant claimed that he did not solicit any clients from J.P. Morgan. ECF 12-2, PgID 374. More than two dozen of Defendant's clients that left J.P. Morgan signed declarations that suggested Defendant had not solicited them to leave. *Id.*; *see also id.* at 399–425 (declarations). Defendant also explained that his motive for calling clients was to inform them that he was leaving J.P. Morgan, *id.* at 376, and that he recreated the client contact information from his memory and public data. *Id.* at 375–76. He also recreated those lists while he was working at J.P. Morgan. *Id.* at 378 (noting that he compiled the information in May).

In 2011, Defendant had signed arbitration, confidentiality, and non-solicitation agreements with J.P. Morgan. ECF 5-2, PgID 280. The parties do not dispute the contract's terms. ECF 3, PgID 48–50; ECF 12, PgID 305–09. In brief, the contract prohibits Defendant from using J.P. Morgan's confidential information, such as "account information," customer contact information, and "investment holdings" once his employment with J.P. Morgan ends. ECF 5-2, PgID 281. It also bars Defendant from soliciting J.P. Morgan's customers within a year after Defendant's employment with J.P. Morgan ends. *Id.* at 281–82. The parties agreed that any breach of those two provisions would "cause immediate and irreparable injury to [J.P. Morgan] that cannot adequately be compensated by monetary damages." *Id.* at 282. The arbitration agreement requires that a Financial Industry Regulatory Authority ("FINRA") arbitrator resolve "[a]ny claim or controversy" arising from the contract.

*Id.* at 283. There is an exception, however, that allows either party "to seek temporary or preliminary injunctive relief in any court of competent jurisdiction in New York, New York to enforce any right under" the contract. *Id.* The parties have explained that they will arbitrate their claims before FINRA as soon as possible. ECF 4, PgID 253; ECF 12-2, PgID 381.

Until then, J.P. Morgan moved for a temporary restraining order against Defendant to bar him from using J.P. Morgan's "confidential and proprietary information in order to solicit [J.P. Morgan's] clients for his own personal gain and for the benefit of Defendant's new employer . . . to [J.P. Morgan's] detriment." ECF 4, PgID 253. J.P. Morgan also sought leave for expedited discovery to aid the preliminary injunction process, "including the right to depose Defendant and inspect Defendant's personal and business computers and electronic devices." ECF 2, PgID 38.

## LEGAL STANDARD

Federal Rule of Civil Procedure 65 governs temporary restraining orders. "[A] temporary restraining order is an extraordinary remedy designed for the limited purpose of preserving the status quo pending further proceedings on the merits." *Stein v. Thomas*, 672 F. App'x 565, 572 (6th Cir. 2016) (McKeague, J., dissenting) (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)).

Four factors determine when a court should grant a temporary restraining order: "(1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent a stay, (3) whether

granting the stay would cause substantial harm to others, and (4) whether the public interest would be served by granting the stay." *Ne. Ohio Coal. for the Homeless v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006) (citation omitted). Those factors are the same as the factors a court may consider for a preliminary injunction. *Compare id.*, *with D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 326 (6th Cir. 2019). The party seeking a temporary restraining order bears the burden of justifying relief under the four factors. *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012) (citation omitted); *see also Barron v. PGA Tour, Inc.*, 670 F. Supp. 2d 674, 682 (W.D. Tenn. 2009) (collecting cases).

For Rule 65 relief, the Court may rely on affidavits and hearsay evidence. *Doe #11 v. Lee*, ---F. Supp. 3d---, 2022 WL 2181800, at *7 (M.D. Tenn. 2022) (collecting cases); *Damon's Rests., Inc. v. Eileen K Inc.*, 461 F. Supp. 2d 607, 620–21 (S.D. Ohio 2006) (explaining that although the Sixth Circuit has not considered the hearsay issue, federal courts often rely on hearsay evidence at the preliminary injunction stage). To confirm, "in practice affidavits usually are accepted on a preliminary injunction motion without regard to the strict standards of Rule 56(c)(4), and . . . hearsay evidence also may be considered." 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2949 (3d ed. 2022) (footnotes omitted).

## DISCUSSION

The Court will first discuss why it may issue a temporary restraining order despite the arbitration proceeding that J.P. Morgan has begun against Defendant.

ECF 3, PgID 40 n.1. After, the Court will address why J.P. Morgan has met its burden for a temporary restraining order based on the four *Blackwell* factors. Last, the Court will detail the actions that the temporary restraining order bars and the Court will specify the bond that J.P. Morgan must deposit.

I.   Power to Issue Temporary Restraining Order

The Court issued a show cause order for why the case should not be transferred to another district. ECF 15. The parties provided no helpful research that addressed the Court's show cause order. ECF 23; 26.

The purpose of the show cause order was to decide whether the Court has subject-matter jurisdiction under the Federal Arbitration Action ("FAA") to resolve the temporary restraining order. ECF 15, PgID 487. J.P. Morgan explained that it would waive the choice of forum selection in the arbitration agreement so that the Court could resolve the pending motion. ECF 26, PgID 547. And Defendant believed that the case should remain in the Eastern District of Michigan "[f]or the sake of continuity" because the parties' "arbitration will be heard in Michigan." ECF 23, PgID 518. But waiver and convenience for the parties have nothing to do with whether the Court has subject-matter jurisdiction to grant relief under Rule 65. In all, although the Court requested briefing on subject-matter jurisdiction, the issue was not briefed.

Still, based on the Court's research, the Court has subject-matter jurisdiction over the motion for Rule 65 relief. The Sixth Circuit has held that a district court has subject-matter jurisdiction under Section 3 of the FAA to grant relief under Civil Rule 65 pending arbitration. *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52

F.3d 1373, 1378–80 (6th Cir. 1995). Temporary restraining orders and injunctive relief are appropriate when withholding either "would render the process of arbitration meaningless or a hollow formality because an arbitral award, at the time it was rendered, 'could not return the parties substantially to the status quo.'" *Id.* at 1380 (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*, 756 F.2d 1048, 1053 (4th Cir. 1985)). To reach its decision, the Sixth Circuit relied on the Fourth Circuit's *Bradley* decision and the First Circuit's decision in *Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43 (1st Cir. 1986). *Performance Unlimited, Inc.*, 52 F.3d at 1378–80. The Sixth Circuit largely based its reasoning on *Bradley*'s textual and legislative history analysis and *Mostek*'s policy analysis. *Performance Unlimited, Inc.*, 52 F.3d at 1378–80.

Most Courts of Appeals have read Section 3 of the FAA the same way as the Sixth Circuit and have held that district courts retain subject-matter jurisdiction to grant Rule 65 relief pending arbitration. *Toyo Tire Holdings of Ams. Inc. v. Cont'l Tire N. Am., Inc.*, 609 F.3d 975, 981–82 (9th Cir. 2010) (collecting cases). The Eighth Circuit, however, held that district courts lack jurisdiction to grant Rule 65 relief when the FAA applies, and when the parties' arbitration agreement lacks "qualifying language" allowing for Rule 65 relief.[1] *Merrill Lynch, Pierce, Fenner & Smith, Inc. v.*

---

[1] The arbitration agreement here lacks qualifying language because it delegated requests for Rule 65 relief to "any court of competent jurisdiction in *New York, New York* to enforce any rights under this [a]greement." ECF 5-2, PgID 283 (emphasis added); *see Peabody Coalsales Co.*, 36 F.3d at 47 n.3 ("We find 'qualifying contractual language' to mean language which provides the court with clear grounds to grant relief without addressing the merits of the underlying arbitrable dispute.").

7

*Hovey*, 726 F.2d 1286, 1291–92 (8th Cir. 1984); *see, e.g.*, *Peabody Coalsales Co. v. Tampa Elec. Co.*, 36 F.3d 46, 47–48 (8th Cir. 1994). The Eighth Circuit relied on the FAA's plain text and the "unmistakably clear congressional purpose" of avoiding "delay and obstruction in the courts." *Hovey*, 726 F.2d at 1292 (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967)).

Since then, the United States Supreme Court has not addressed the circuit split. But the Supreme Court *has* explained that the FAA's text in Sections 2, 3, and 4 supports its "overarching purpose" of "ensur[ing] the enforcement of arbitration agreements according to their terms so as to facilitate informal, streamlined proceedings." *Concepcion*, 563 U.S. at 344. In short, the relevant case law has not changed much since *Performance Unlimited*.

Based on the Court's research, *Performance Unlimited* remains good law. Neither the Sixth Circuit nor a district court within the Sixth Circuit has questioned the *Performance Unlimited* holding. One district court, however, has read *Performance Unlimited* to allow a district court to only issue a constrained injunction that would merely maintain the status quo. *Advantage Waypoint, LLC v. Baker*, No. 3:17-cv-01053, 2018 WL 10152454, at *4 (M.D. Tenn. Jan. 23, 2018). And two district courts, have found that *Performance Unlimited* is confined to only preliminary injunctions—not permanent injunctions. *Nexteer Auto. Corp. v. Korea Delphi Auto. Sys. Corp.*, No. 13-cv-15189, 2014 WL 562264, at * 13–14 (E.D. Mich. Feb. 13, 2014) (discussing *Kwansny Co. v. AcryliCon Int'l*, No. 09–13357, 2010 WL 2474788 (E.D. Mich. June 11, 2010)). Both those district courts also agreed that when "the parties

have agreed to arbitrate their dispute, injunctive relief should be granted only when necessary to ensure that the arbitration process is not rendered meaningless." *Id.* at *14; *Kwansny Co.*, 2010 WL 2474788, at *7. Thus, the consensus in the Sixth Circuit appears to favor limited Rule 65 relief that ensures only that the arbitration process is not a fool's errand. The Court will therefore weigh the temporary restraining order factors with that limitation in mind.

## II.   Temporary Restraining Order

Each factor favors granting the temporary restraining order. The Court will address each in turn.

### A.   Likelihood of Success on the Merits

"The moving party need only show a likelihood of success on the merits on one claim where there are multiple claims at issue in a complaint." *Planned Parenthood Great Nw. Haw., Alaska, Ind., & Ky., Inc. v. Cameron*, ---F. Supp. 3d---, 2022 WL 1183560, at *5 (W.D. Ky. 2022) (collecting cases). To show a likelihood of success on the merits, the moving party need not prove their case in full; the party need only "show more than a mere possibility of success." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 543 (6th Cir. 2007) (quotation omitted). The moving party must therefore "raise[] questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997) (citation omitted).

The parties do not dispute that Defendant signed the contract and that the Court can enforce its terms under Rule 65. ECF 3, PgID 48–50; ECF 12, PgID 305–09. But Defendant argued that J.P. Morgan showed no admissible evidence of solicitation or misappropriation of trade secrets. ECF 12, PgID 305–16. As Defendant put it, he merely "notif[ied]" clients that he was moving companies, *id.* at 305, and he simply compiled all the customer information from public sources and memory, *id.* at 311. All put differently, Defendant offered a factual defense for why he did not breach the contract.

Still, J.P. Morgan has shown a likelihood of success that Defendant breached the confidentiality and non-solicitation terms in the contract. J.P. Morgan has evidence that shows, for example, that Defendant asked a J.P. Morgan client to cancel his meeting with a J.P. Morgan broker, and that he completed documents with the client's account information to transfer the client's accounts from J.P. Morgan. ECF 5, PgID 266. Defendant has also flooded several J.P. Morgan clients with follow-up calls and requests for meetings. *Id.* at 265–66, 274–75.

What is more, two days before Defendant's resignation at J.P. Morgan, he accessed more than one-hundred client profiles on J.P. Morgan's computers in less than forty-five minutes. *Id.* at 275. These profiles contained confidential information such as investment, contact, and personal information belonging to the clients. *Id.* And a week before his resignation, Defendant accessed sixty client profiles on J.P. Morgan's computers in less than thirty minutes. *Id.* at 275–76. As detailed in a

declaration to the reply brief, Defendant accessed an average of *twenty-six* client profiles during a given workday from the past year. ECF 21, PgID 504.

Defendant even admitted to recreating the client lists while he worked for J.P. Morgan. ECF 12-2, PgID 378. Since leaving J.P. Morgan, Defendant has poached twenty clients from J.P. Morgan worth $24 million in assets. ECF 5, PgID 267; ECF 12-1, PgID 340.

As expected, Defendant claimed that he did not solicit any clients from J.P. Morgan. ECF 12-2, PgID 374. And he offered signed declarations from twenty-seven clients who left J.P. Morgan that suggest those clients were not solicited. *Id.*; *see also id.* at 399–425 (declarations). Defendant's purpose for calling clients was to inform them that he was leaving J.P. Morgan. *Id.* at 376.

Yet none of that evidence explains Defendant's suspicious conduct in his last days at J.P. Morgan when he viewed confidential information about client profiles. At best, the evidence only shows that out of the hundreds of J.P. Morgan clients he worked with, a little over two dozen—who submitted declarations—were not solicited. To show a likelihood of success on the merits, the contract's plain text requires that J.P. Morgan need only show that Defendant violated the confidentiality and non-solicitation covenants *once*. ECF 5-2, PgID 281–82. J.P. Morgan met that burden. The first factor thus favors granting a temporary restraining order.

### B.    *Irreparable Harm*

"[T]he moving party must show that irreparable harm is 'both certain and immediate, rather than speculative or theoretical.'" *Contech Casting, LLC v. ZF*

*Steering Sys., LLC*, 931 F. Supp. 2d 809, 818 (E.D. Mich. 2013) (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991)). A moving party suffers irreparable harm from the denial of a motion for a temporary restraining order if the harm "is not fully compensable by monetary damages." *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002) (citation omitted). An injury is not fully compensable by monetary damages "if the nature of the [moving party's] loss would make the damages difficult to calculate." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992) (citation omitted).

Several irreparable harms exist here. First, loss of fair competition based on the breach of a noncompete covenant is likely to cause irreparable harm. ECF 5, PgID 267 (detailing clients lost to Defendant's conduct); *Basicomputer Corp.*, 973 F.2d at 512. Working for a competitor while using confidential information gained from earlier work experience will indeed cause irreparable harm. *See* ECF 5, PgID 270 (explaining confidential information); *see, e.g., Certified Restoration*, 511 F.3d at 550 (holding that the loss of customer goodwill and fair competition resulting from a franchisee's breach of a noncompete covenant constituted irreparable harm); *Kelly Servs., Inc. v. Noretto*, 495 F. Supp. 2d 645, 659 (E.D. Mich. 2007) (finding that irreparable harm existed when a former employee competed against his former employer directly and used his knowledge of the business to his advantage); *Lowry Comput. Prods., Inc. v. Head*, 984 F. Supp. 1111, 1116 (E.D. Mich. 1997) ("[W]orking for a direct competitor in a similar area . . . is bound to have a significant adverse impact on" the former employer's business). And finally, the risk of new breaches is

an irreparable injury because it cannot be captured by money damages. ECF 5, PgID 276–77 (explaining harms from potential future breaches); *L.A. Ins. Agency Franchising, LLC v. Kutob*, No. 2:18-cv-12310, 2018 WL 11246825, at *5 (E.D. Mich. Nov. 8, 2018) (Murphy, J.).

The parties also agreed in the contract that if Defendant breached the confidentiality and non-solicitation of J.P. Morgan's customers clauses, then he "will cause immediate and irreparable injury to [J.P. Morgan] that cannot be adequately compensated by monetary damages." ECF 5-2, PgID 282. Such contractual provisions do support finding irreparable harm. *York Risk Servs. Grp., Inc. v. Couture*, 787 F. App'x 301, 308 (6th Cir. 2019) (citing *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1266 (10th Cir. 2004)). In all, J.P. Morgan has shown irreparable harm from Defendant's alleged conduct.

C.    *Substantial Harm to Others*

The third factor favors granting the motion. The harm to third parties is minimal. Defendant suggested that a temporary restraining order will harm his clients and himself. ECF 12, PgID 321–22. But J.P. Morgan has sought only to restrict Defendant's work to solicit current J.P. Morgan clients and to use J.P. Morgan's confidential client information. ECF 3, PgID 56; *see also* ECF 2, PgID 37–38. As a result, a temporary restraining order may harm only the clients that are currently represented by J.P. Morgan.

It does not harm the clients whom Defendant allegedly poached, nor does it harm clients who freely chose to leave J.P. Morgan for Defendant or will freely choose

to leave J.P. Morgan. *See* ECF 3, PgID 56; *see also* ECF 2, PgID 37–38; ECF 20, PgID 496–97. Put simply, any potential harm to clients is small.

Although a temporary restraining order would also harm Defendant's livelihood, J.P. Morgan has neither sought to restrict Defendant from working for any competitor nor exit the industry. Defendant may work at any competitor and may work for a wide range of clients who have already worked with the competitor or the dozens of other competitors. He may even work with clients from J.P. Morgan except those clients he serviced at J.P. Morgan or whose name he learned through his employment with J.P. Morgan. The harm against Defendant is therefore small. At bottom, the harms to Defendant and the third parties are far from substantial and thus the third factor favors a temporary restraining order.

### D. *Public Interest*

Last, the public interest favors granting the temporary restraining order. For one, enforcing a contract by its plain terms is in the public interest. *Certified Restoration*, 511 F.3d at 551. For another, any temporary restraining order would not bar or otherwise restrict clients from leaving J.P. Morgan for another broker or Defendant. The fourth factor thus favors granting the motion. In sum, J.P. Morgan has met its burden for a temporary restraining order because all four factors favor granting the motion.

### III. <u>Bond and Actions Enjoined</u>

Civil Rule 65 provides specific guidance for courts that grant temporary restraining orders. Under Rule 65(c), a court "may issue a . . . temporary restraining

order only if the movant gives security in an amount that the court considers proper to pay the costs . . . sustained" by any wrongfully enjoined party. Although the Court has the discretion to impose a security, the Court must "expressly consider[] the question of requiring a bond." *Roth v. Bank of the Commonwealth*, 583 F.2d 527, 539 (6th Cir. 1978); *see also Dunkin' Donuts Franchised Rests. LLC v. Shrijee Inv., Inc.*, Nos. 08-12836, 08-14213, 2008 WL 5384077, at *9 (E.D. Mich. Dec. 23, 2008). And under Rule 65(d)(1), the Court's restraining order must: (1) "state the reasons why it issued"; (2) "state its terms specifically; and" (3) "describe in reasonable detail . . . the act or acts restrained or required."

The Court will require J.P. Morgan to post a security of fifty thousand dollars with the Court's registry. Fifty thousand dollars is more than enough money to pay Defendant if, in the end, he is wrongfully enjoined. The Court will temporarily restrain the following conduct for fourteen days:

- Defendant, and all those acting in concert with him, are **TEMPORARILY ENJOINED** and **RESTRAINED**, directly or indirectly, from:

    - Soliciting, attempting to solicit, inducing to leave, or trying to induce to leave any client of J.P. Morgan serviced by Defendant at J.P. Morgan or whose name became known to Defendant through his employment with J.P. Morgan (or any of its predecessors in interest); and

    - Using, disclosing, or transmitting for any purpose J.P. Morgan's documents, materials, or confidential and proprietary information

15

pertaining to J.P. Morgan, J.P. Morgan's employees, or J.P. Morgan's clients.

- Defendant, and all those acting in concert with him, must **RETURN** to J.P. Morgan or its counsel all records, documents, or information in whatever form pertaining to J.P. Morgan's clients, employees, and business, **within twenty-four hours** of notice to Defendant or his counsel of the terms in the present order.

- This temporary restraining order is **BINDING** on Defendant, his agents, servants, employer, any entity with which he is employed or affiliated, and those in active concert or participation with him who receive actual notice of the present order.

Last, J.P. Morgan has shown good cause to have expedited discovery to prepare for the preliminary injunction hearing. *See USEC Inc. v. Everitt*, No. 3:09-CV-4, 2009 WL 152479, at *2–3 (E.D. Tenn. Jan. 22, 2009) (explaining that case law often allows discovery to proceed in cases involving requests for injunctive relief). The Court expects the parties will work cooperatively to promptly exchange discovery.

## CONCLUSION

The Court will hold a preliminary injunction hearing later this month. As the Court explained, the standard for a temporary restraining order is the same as the standard for a preliminary injunction. If J.P. Morgan's preliminary injunction motion relies on the same evidence, then the Court will, in the interest of judicial economy, promptly convert the present order to a preliminary injunction. *See Provectus*

16

*Biopharmaceuticals, Inc. v. Dees*, No. 3:16-CV-222, 2016 WL 8738437, at *2 (E.D. Tenn. Sept. 16, 2016).

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the motion for a temporary restraining order [2] is **GRANTED**.

**IT IS FURTHER ORDERED** that J.P. Morgan must **POST** a **$50,000 security no later than August 16, 2022**.

**IT IS FURTHER ORDERED** that Defendant, and all those acting in concert with him, are **TEMPORARILY ENJOINED** and **RESTRAINED**, directly or indirectly, from:

- Soliciting, attempting to solicit, inducing to leave, or trying to induce to leave any client of J.P. Morgan serviced by Defendant at J.P. Morgan or whose name became known to Defendant through his employment with J.P. Morgan (or any of its predecessors in interest); and

- Using, disclosing, or transmitting for any purpose J.P. Morgan's documents, materials, or confidential and proprietary information pertaining to J.P. Morgan, J.P. Morgan's employees, or J.P. Morgan's clients.

**IT IS FURTHER ORDERED** that Defendant, and all those acting in concert with him, must **RETURN** to J.P. Morgan or its counsel all records, documents, or information in whatever form pertaining to J.P. Morgan's clients, employees, and

17

business, **within twenty-four hours** of notice to Defendant or his counsel of the terms of the present order.

**IT IS FURTHER ORDERED** that this temporary restraining order is **BINDING** on Defendant, his agents, servants, employer, any entity with which he is employed or affiliated, and those in active concert or participation with him who receive actual notice of the present order.

**IT IS FURTHER ORDERED** that the present order will **REMAIN IN EFFECT** for **fourteen days**.

**IT IS FURTHER ORDERED** that the parties may **BEGIN** expedited discovery immediately in aid of preliminary injunction proceedings before this Court, including the right to depose Defendant and inspect Defendant's personal and business computers and electronic devices.

**IT IS FURTHER ORDERED** that the parties must **APPEAR** on **August 24, 2022 at 10:00 a.m. in Courtroom 216** and show cause for why the present order should not be converted into a preliminary injunction until a duly appointed panel of FINRA arbitrators decides J.P. Morgan's claim for permanent injunctive relief. Defendant's brief for the hearing is **DUE no later than August 16, 2022**. J.P. Morgan's response brief is **DUE no later than August 22, 2022**. And Defendant may **FILE** a reply brief **no later than August 23, 2022**. The briefing must otherwise **COMPLY** with Local Rules 5.1 and 7.1.

**IT IS FURTHER ORDERED** that the motion to strike [24] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court must **STRIKE** ECF 22 and ECF 25.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: August 11, 2022

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 11, 2022, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager

19